80,474-03

The Court of Criminal
Appeals of Texas
P.O. Box 12308 Capitol Station
Austin, TX 78711

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 09 2015

Abel Acosta, Clerk

Dear Mr. Abel Acosta, Clerk

I have enclosed a motion, rebuttal, and exhibits to recall facts
in the post conviction proceeding cause no. 1284277-B. Please file
and present these documents to the Honorable Judge of this court.
Thank you.

Respectfully Submitted

Signature                    12/29/2014

MOTION DENIED
DATE: 2-12-15
BY: PC

CAUSE NUMBER 1284277-B

WILLIE EDWARD CHOICE           §      IN THE COURT OF
                               §
VS                             §      CRIMINAL
                               §
THE STATE OF TEXAS             §      APPEALS OF TEXAS
                               §


TO THE HONORABLE JUDGE OF THE COURT OF CRIMINAL APPEALS:

Come now Willie Edward Choice pro se applicant, would like to inform the court after December 2, 2014 the clerk of the 176th District Court of Harris County Texas mail the forwarding copy of the trial courts finding of facts to the Garza unit Beeville Texas address where I am not retained cause a delay. Thereby inconvenience of the clerks error and due to the holidays I respectfully ask this court to review the enclosed filed copies, motion, rebttal and exhibit, (proof of the facts) in the case.

Respectfully Submitted

_____ 12/29/2014
Signature

CAUSE NO. 1284277-B

WILLIE EDWARD CHOICE           §      IN THE COURT OF CRIMINAL

                              §

VS                             §      APPEALS

                              §

STATE OF TEXAS                 §      AUSTIN TEXAS

                              §

Motion to object to the trial court finding of facts and
conclusion of law.

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now applicant Willie Edward Choice before this court in this

motion and object to the trial courts conclusion of law on the

following in the States application page 3 at 16 alleged the app-

licant was not placed in jeopardy twice for same offense. See

State writ exhibit B and C indictment. In the probable cause rep-

ort taken by affiant Jackie Blanchard during the forenic interview

of the complaintant Datavia M. Evangelista third paragraph under

probable cause. The complainant alleged on or about October 20,

2010 at 1006 Carolyn Ct., Humble Texas the offense supposedly

occurred against her. The affiant Jackie Blanchard appeared be-

fore the assistant district attorney of Harris county Texas and

stated under oath that Willie Edward Choice the defendant alleg-

edly committed the offfense against the child on or about March

17, 2010 inconstant with the childs statement in the report. In

the second paragraph in the probable cause report the affiant

interviewed the sister Davondria Evangelista that stated during

the interview alleged the offense committed against her on March

17, 2010 however the affiant Jackie Blanchard stated under oath

that the offense allegedly occurred against the child Davondria

Evanglista on or about October 20, 2010 inconstant with the re-

port. This error violates the applicants right to due process of

law, U.S. Constitution fourteenth and fifth Amendment. However, both girls testified in the first trial cause no. 1284276 litigating their claim against the applicant therein was found not guilty and acquitted of the offense alleged. The State was barred from relitigating the same issues in a second trial. Applicant believe that because of the affiant error to due process of law both indictments should have been "Squashed". Applicants trial counsel was on a fully probated suspension and was not eligible to practice law in the state of Texas deceitfully took the case. Under the circumstances did not challenge the State prosecutor or made any attempt to prevent a second prosecution. Violated double jeopardy U.S. Const. 5th Amendment. (see) document from the State bar of Texas. Applicant pray that the Court of Criminal Appeal will act accordingly as justice require.

Respectfully Submitted

_____ 12/29/2014
Signature

CAUSE NUMBER 1284277-B

| WILLIE EDWARD CHOICE | § | IN THE 176TH DISTRICT COURT |
| | § | |
| VS | § | OF |
| | § | |
| THE STATE OF TEXAS | § | HARRIS COUNTY TEXAS |
| | § | |

REBUTTAL

TO THE HONORABLE JUDGE OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

Comes now the applicant Willie Edward Choice before this Court, and files this rebuttal to the above court finding of facts and conclusion of law and recommendation. The applicant filed a motion for a evidentiary hearing Sept. 18, 2014 and no response from the trial court. (citing) Perillo v. Johnson 79 F3 441 5th Cir 1996 at 446,447. Therefore the applicant offer this proof in the records and portions of the writ 11.07 that points out facts not considered by the trial court and my trial counsel. The applicant pray that the court of criminal appeals review these facts offered in my behalf to prevent a unfair judgement. (Cite) Soline v. United States 709 F2d 160 2d cir 1983 at 168-69 and a miscarrage of justice.

Respectfully Submitted

Signature                          12/29/2014

IN THE COURT OF CRIMINAL APPEALS

The Applicant's Response to the Trial Court's Findings of Facts

and Conclusions of Law   (State's Writ Page 5)

The Trial Court alleges the Applicant received totality of representation
sufficient to protect his rights to reasonably effective assistance of trial
counsel.

Applicant's Response:  Applicants Writ 6 Memorandum of Law Ground One page 5
Trial Counsel Mr. Osborne should have cross-examined the State's witness,
"Complainant Davondria Evangelista" from a prior trial with her sister Datavia
Evangelista in which the Applicant was acquitted.  There was no logical reason
for counsel Mr. Osborne not to examine a critical witness as a critical stage
of the trial.  While the same issues were being relitigated was Constitutional
Error.  **United States v Cronic,** 466 U.S. at 659  (See Exhibit A1 through 5 at
A5-23)

Issue 2.  Mr. Osborne did not object to the Court's jury charge at the guilt/
innocence phase of the trial or at the punishment phase of trial, which was
limited to "egregious" "error".  [see exhibit B]

Issue 3.  Improper argument during voir dire and closing argument.
Applicant's Response:  Prosecutor stated the Applicant confessed to the crime,
and that the Applicant lied on the witness stand.  (See Exhibit C)  Prosecutor
during voir dire insinuated no one lies about sexual abuse was improper.
(Exhibit C2 at 19)  "Misleading the Jury."

Issue 4:  The Court alleged the Applicant must prove harm of a venire panel
shuffled outside the Applicant's presence.

1

Applicant's Response: The shuffle was verbal by Trial Counsel Mr. Osborne and is unconstitutional and no harm is need of showing. Tex. Code Crim. Proc. art. 35.11 **Scott v State**, 805 S.W. 2d 612, 614 (Tex. app.- Austin 1991)

Issue 5: The Court finds that the applicant did not object to Dr. Thompson's testimony at trial or raise the issue on appeal.

Applicant's Response: Dr. Thompson did not meet the criteria of Tex. Code Crim. Proc. Evid. Rule 703. This is a Constitutional violation of the Applicant's right to due process of law. Dr. Thompson had no data in the case are base on an opinion of the facts in the case or had ever met the child Datavia Evangilista while the State and the outcry witness Sadyia Evangilista was asserting misleading the jury that the child was being treated at the center where his is overseer.[see exhibit E1 through 3] who never met the child. The Applicant was deprived of reasonable effective protection of Trial Counsel and Appelant Counel not to raise an obvious fact. see Exparte Gardner 959 S.W.2d at 201

Issue 6: The Court alleged Blanchard was not inconsistent from her probable cause affidavit in her testimony at trial.

Applicant's Response: See state's writ (Exhibits D and E) Blanchard was very inconsistent in her testimony. Blanchard stated in her report to the District Attorney that Datavia Evangelista alleged the offense supposedly occurred against her on or about March 17, 2010: under Probable Cause, Blanchard state's that in a interview the report alleged the child Datavia stated on or about October 20, 2010 was stated by the complainant, a violation of due process of law to state date not alleged by complainant. Blanchard in the affidavit report state's the Applicant denied inserting his finger inside their vaginas. (see Exhibit D1) The record shows Blanchard testified at trial the Applicant had admitted to sticking his finger inside of the child's vagina inconsistent with

2

her report. [see Exhibit D2, D3] Therefore the State prosecuted the Applicant on both girls testimony in the first trial.

Issue 7: The Court seeks proof of suppression of evidence in the record.

Applicant's Response: The State filed a Motion Inlime to exclude that Datavia Evangelista had testified in the first trial where the Applicant was acquitted of both girls testimony's which vilated his Fifth Amendment rights. Testimony is evidence. (see Exhibit F) copy of the Motion Inlime limited my defense violated Tex. Code Crim. Proc. art 2.01 "They shall not suppress facts" and violated U.S. Const. Fourteenth Amend. right to due process of law.

Issue 8: The State alleges the Applicant was not placed in jeopardy twice for the same offense. (see State's writ Exhibit B and C indictments)

Applicant's Response: The State prosecuted the Applicant in the first trial wherein "both complainant's" testified under offense report number O/R No. 10005703 Humble PD alleging the statement's the affiant observed in the forensic interview. The Applicant was found Not Guilty and Acquitted. The State used the same offense O/R number No. 10005703 to reprosecute the Applicant using the same alleged victims from the first trial. Jeopardy attached to all the evidence offered at the first trial.

## CONCLUSION OF LAW

Applicant prays the Court of Criminal Appeals finds:

1. Applicant's Trial Counsel was not effective.

2. Applicant was placed twice in jeopardy for the same offense.

3. Applicant's right to due process of law was violated.

4. Dismiss the charges.

Respectfully Submitted,

12/29/2019

3

Please call your next.

MS. BYROM:  The State calls Davondria Evangelista.

THE COURT:  You may proceed.

MS. BYROM:  May it please the Court.  Actually, your Honor, if you don't mind I'm going to move up here.

THE COURT:  That's fine.

| DAVONDRIA EVANGELISTA,
having been duly sworn, testified as follows:

DIRECT EXAMINATION

BY MS. BYROM:

Q.  Good afternoon, Davondria.  Could you please introduce yourself to the ladies and gentlemen of the jury by telling them your name.

A.  My name is Davondria Evangelista.

Q.  Okay.  Now, Davondria, you're going to have to speak a little bit closer into the microphone, okay?

A.  Yes.

Q.  Can you say testing one two three?

A.  Testing one two three.

MS. BYROM:  Can you hear?

A JUROR:  Uh-huh.

Q.  (By Ms. Byrom) It's real important that you speak up so that way everyone can hear you, okay?

A.  Yes, ma'am.

Q.  Okay.  Davondria, how old are you?

Applicant was placed in jeopardy twice with each girl's testimony after Acquittal.

*Davondria relitigating same issues from Prior trial.*

restaurant in October of 2010?

A.   Yes, ma'am.

Q.   Who was there with you that day?

THE COURT:  I'm sorry, ladies and gentlemen, can you-all excuse us for just a minute.  Take the jury out for just a minute.

*U.S. Const. 5th 14th Amend Violation*

(Jury out.)

THE COURT:  Be seated.

I'm sorry, you're just making me real real nervous, from the time that you called her, so --

MS. BYROM:  It's okay.

THE COURT:  Déjà vu all over again.

MS. BYROM:  I'll give you a proffer as to what I anticipate.  Essentially I anticipate her just discussing what she observed happening there at the restaurant that day with her sister, and how the police were contacted, and then we'll be done with her.  Just so the jury will understand that how the police got involved in the first place.

THE COURT:  Okay.

MS. BYROM:  And that's it.  It really won't be very much longer.

THE COURT:  She knows all that.   *Coaching the witness*

MS. BYROM:  I've spoken to her about not talking about anything involving herself and Mr. Choice.  We're not going to cover any of that.  Don't worry, it's just going to be

*Deja vu : in Webster's dictionary; already seen, the illusion of having previously experienced*

Q. Louder?

A. Yes, ma'am.

Q. And what about Rachel, how old is Rachel?

A. Four.

Q. Okay. And who is Rachel's father?

A. Mr. Will.

Q. Who?

A. Mr. Will.

Q. And what is Mr. Will's full name?

A. Uh, Willie Choice.

Q. Okay. How do you know Mr. Will?

A. Because I used to stay with him a long time ago.

Q. You got to speak a little bit louder, okay, Davondria?

A. I used to stay with him.

Q. Okay. And when you used to stay with Mr. Will, where would you stay with him, do you remember the street name?

A. Uh, not really. I think it was Caroline something.

Q. And was that in -- do you remember the city that that was in?

A. Yes, ma'am.

Q. What city was that in?

A. Humble.

Q. Okay. That was here in Humble in Texas?

A. Yes, ma'am.

Q. Okay, good.

Did anyone live with you at the house with Mr. Will besides your sister Datavia and your sister Rachel?

A. Yes, ma'am.

Q. Who else lived there with you?

A. My mom, and Caleb, and Benjamin, my step-brothers.

Q. Who is Caleb?

A. He -- was my step-brother.

Q. And how old is he?

A. I don't know how old he is right now.

Q. Is he a big kid or a little kid?

A. He's about in the middle, like seven, eight.

Q. Okay. And what about your -- the other -- Benjamin, how old was he?

A. Uh, I think he was about 15.

Q. Okay. Where do you live now? Do you live with your mom and Mr. Will now?

A. No, ma'am.

Q. Who do you live with now?

A. I live with my aunt.

Q. And what is her name?

A. Sadiyah Evangelista.

Q. And how long have you lived with her?

A. About a year and a half now.

Q. Okay. And who else lives there besides you and your

A.    January 28th.

Q.    Okay.  Okay.  I want you to take a moment and look around the room, Davondria.  Do you see the person in the room that you call Mr. Will?

A.    Yes, ma'am.

Q.    Could you please point to him and kind of describe where he's sitting?

A.    Right there.  He's sitting by Ms. Becky.

Q.    Okay.  And what is he wearing?

A.    He's wearing a black suit.

Q.    Okay.  Does he have on a tie or glasses or anything like that?

A.    Yes, ma'am.

Q.    What else is he wearing besides a suit?

A.    He's wearing a tie, glasses.

Q.    Okay.

MS. BYROM:  May the record reflect that she's identified the defendant.

THE COURT:  The record will reflect.

MS. BYROM:  Thank you.

And I will pass this witness.

THE COURT:  All right.  Mr. Osborne.

MR. OSBORNE:  I have no questions.

*Was Not effective Counsel Should Have raised A defense.*

THE COURT:  All right.  May she be excused?

MS. BYROM:  Yes, your Honor.

Because there was no evidence before the jury that appellant had been charged with the sexual assault of the complainant's sister, evidence of appellant's acquittal was not relevant to the issue of the proper punishment to be assessed in the case being tried.

**7. Instructions to the Jury**: Appellant did not object to the Court's jury charge at the guilt/innocence phase of trial, or at the punishment phase of trial (R.R. 6, 52, 72; R.R. 7, 41-42). Defense counsel's affirmative statements, "no objections to the charge," waived any error because it leads the trial court to believe it is giving a charge to which the defendant has no objection. *Coleman v. State,* 45 S.W.3d 175 (Tex.App. Houston [1st Dist.] 2001, pet. ref'd). Absent an objection to the charge, review is limited to "egregious error" which is error that goes to the very basis of the case, deprives the defendant of a valuable right, or vitally affects the defense. *Texas Code of Criminal Procedure,* Art. 36.19; *Almanza v. State,* 686 S.W.2d 157, 172 (Tex.Crim.App. 1985).

The application paragraph at the guilt innocence stage of trial correctly defined the elements of the offense of aggravated sexual abuse of a child and authorized a conviction only if the alleged elements had been proven beyond a

after consulting with his attorney, but I just want you to remember what we discussed during voir dire, that the presumption of innocence is not the presumption of credibility. And you can consider any bias or motive that that man would have to lie up there on the stand.

And you know that he did at some point in time, because even though he confessed to the crime, and he's telling something different now, he claims he was telling the truth on both occasions. And you know that's not possible. This is a man that's willing to say whatever it takes to keep himself out of trouble.

What should you be considering at this point in time? Well, I submit to you there are four factors that you should consider as part of your deliberation and what appropriate punishment is in this case. First of all, I'll go ahead and say it, mitigation. What has he done that's good in his life? Consider that.

Two, future danger to society, is this person a threat? Three, the seriousness of the crime itself. And four, the lasting effect that that man's crime had on Datavia Evangelista. So let's go through and talk about each and every one of those things.

Mitigation, we haven't heard much about what he's done that's good in his life. Sure, you heard that he stayed out of trouble, that he hasn't been convicted of a felony or a

MS. BYROM: Okay. So would you agree with me that children typically lie to get out of trouble, rather than to get themselves into trouble?

VENIREPERSON: Oh, yeah.

MS. BYROM: Oh, yeah. Does that sound familiar to everyone?

Okay. Now, this next part, it's audience participation section. Raise your hand if you ever told a lie in your entire life, including when you were a child.

(Hands raised.)

MS. BYROM: And your hand should be up because if your hand isn't up now, then you're lying now, because everyone's told some little fib at some point in time. No, mom, I didn't eat the last cookie. Now, keep 'em up.

THE COURT: There's one guy there that's never told a lie.

MS. BYROM: It's up now. *Improper Argument (see Writ) Presumption of Credibility that the Complainant will Not Lie*

Okay. Now, keep your hand up if you lied and told someone that you were sexually abused when you really were not.

Not a single hand, okay. *Improper Argument (see Writ) Page 6*

All right. Juror No. -- I think we covered this down here. Let me go over here. I told you it was like a tennis match.

Juror No. 15, what are your expectations for a child witness? What do you think that they'll sound like or look

*My copies are filed issue Raised on direct Appeal pro se*

AFFIANT WAS ADVISED BY THE DEFENDANT THAT HE DID NOT TOUCH COMPLAINANT DAVONDRIA EVANGELISTA'S BREAST EXCEPT WHEN HE ACCIDENTALLY ELBOWED HER IN THE BREAST. THE DEFENDANT DENIED EVER INSERTING HIS FINGER INTO EITHER COMPLAINANT'S VAGINA (FEMALE SEXUAL ORGAN). THE DEFENDANT AGREED TO TAKE A POLYGRAPH EXAMINATION AND SHOWED EXTREME DECEPTION ON THE TEST. THE DEFENDANT REQUESTED TO SPEAK TO THE AFFIANT AFTER THE POLYGRAPH AND CONFESSED. THE DEFENDANT SAID THAT HE HAD RUBBED ON THE COMPLAINANT'S VAGINA ON THE OUTSIDE, BUT DENIED INSERTING HIS FINGER INSIDE THEIR VAGINA'S. THE DEFENDANT STATED THAT HE DID GRAB AND SQUEEZE COMPLAINANT DAVONDRIA EVANGELISTA'S BREASTS AND TOLD HER THAT THEY WERE GETTING BIG, BUT DENIED THAT THIS WAS FOR A SEXUAL REASON. THE DEFENDANT THEN ADMITTED TO RUBBING ON BOTH COMPLAINANTS' BREASTS. THE DEFENDANT THEN STATED THAT HE WAS JUST ADMITTING TO WHAT THE COMPLAINANTS ALLEGATIONS WERE BECAUSE HE THOUGHT IT WOULD "GO BETTER FOR HIM IN COURT". THE AFFIANT ENDED THE INTERVIEW/CONFESSION AT THAT POINT.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

Sworn to and subscribed before me on **November 5, 2010**

_Jackie Blanchard_

AFFIANT

ASSISTANT DISTRICT ATTORNEY          BAR NO.
OF HARRIS COUNTY, TEXAS.

**COMPLAINT**

70-71). The next time he called her into his bedroom, told her to remove her underwear and lay down on his bed. He then lay down next to her and put his index finger in her vagina (R.R. 5, 73-76). Appellant threatened to kill her if she told anyone (R.R. 5, 72, 80). Her testimony was inconsistent as to whether this type of touching occurred more than once. She initially testified that appellant never again touched her in a way that he shouldn't have (R.R. 5, 81), but admitted that she told the prosecutor that it had happened five times (R.R. 5, 82) and went on to testify that he penetrated her vagina with his finger a total of three times (R.R. 5, 82-87).

Datavia eventually told her aunt about the touching when they were together in the restroom of a restaurant (R.R.5, 88-89, 101-102). Her outcry was confirmed by her mother, Thelma Choice (R.R. 6, 34), and her sister, Davondria Evangelista (R.R. 5, 57-61). The police were contacted, and Detective Jackie Blanchard of the Humble Police Department determined that the first officer was contacted on October 23, 2010, and the alleged abuse occurred the prior week. Tasha Rogers-James conducted a forensic interview on October 25, 2010. She found that the complainant was able to distinguish between the truth and a lie, and was able to disclose details about the sexual

abuse (R.R. 5, 39-40, 45).

There was no physical or biological evidence of abuse and no witnesses to the alleged sexual misconduct. Appellant did not testify at the guilt/innocence phase of trial. However, Detective Blanchard testified that Appellant came to the station voluntarily on October 26, 2010, and denied abusing the complainant (R.R. 5, 22). He returned on October 29, 2010, and gave a taped statement in which he admitted to sticking his fingers inside of the child's vagina, but contended that the complainant had been wetting the bed and he was just trying to make her realize she shouldn't sleep so soundly, and that he was checking to see if she were wetting the bed (R.R. 5, 23-25).

## Discussion

The elements of the offense of Aggravated Sexual Assault of a Child as alleged in the indictment are set forth in *Texas Penal Code,* Sec. 22.021:

**Sec. 22.021. Aggravated Sexual Assault**

    (a) A person commits an offense:
        (1) If the person:
            (B) intentionally or knowingly:
                (i) causes the penetration of the mouth or sexual organ of a child by any means, and

c:\appeals\choice\friv. brief         5

MS. BYROM: The State calls Dr. Lawrence Thompson.

THE COURT: Thank you.

Whenever you're ready.

DR. L. THOMPSON,

having been duly sworn, testified as follows:

DIRECT EXAMINATION

BY MS. BYROM:

Q. Good morning, Dr. Thompson. How are you?

A. I'm fine. How are you doing?

Q. Good.

If you'd please introduce yourself by name to the ladies and gentlemen of the jury.

A. Yeah, my name is Dr. Lawrence Thompson Jr.

Q. Dr. Thompson, where do you work?

A. I work at the Harris County Children's Assessment Center.

Q. Okay. And what do you do at the Children's Assessment Center?

A. I'm the director of therapy and psychological services there.

Q. Okay. What sort of training and background and experience do you have to become a director of psychological services there?

A. Well, I have a bachelor's degree in English and a bachelor's degree in psychology from Shriner University, a

little small liberal arts college really in Kerrville, Texas. Also have a master's degree in the clinical psychology and a doctorate in clinical psychology from the University of Michigan.

Q. And how long have you been practicing?

A. As a fully licensed psychologist, since 2001.

Q. Okay. And where have you spent the majority of your career?

A. At the Children's Assessment Center.

Q. And what sort of things have you done at the Children's Assessment Center?

A. Well, I came on to start with as a staff psychologist there, and at that time my job responsibilities were primarily seeing patients, individual therapy, group therapy, psychological evaluations, suicide assessments, homicide assessments, things of that nature.

Became director of psychological services and research in about, I think 2005, and had a lot of the same responsibilities, but more supervisory responsibilities, and ultimately became the director of therapy and psychological services. The agency combined a couple of mental health divisions that I oversee. And now I still provide some direct services to patients, but we have a team of over 30 masters and doctorate level mental health professionals and I supervise all those folks' work at some level or another.

Q. Dr. Thompson, as a part of your practice, your clinical practice, have you ever had a patient by the name of Datavia Evangelista?

A. I have not.

Q. Okay. Have you testified here in Harris County before as an expert?

A. I have.

Q. Would you say that's been on few or many occasions?

A. Many times.

Q. And is it fair to say that you're here to lend your expertise regarding psychology of victims of child sexual abuse to the jury today?

A. That's correct.

Q. Okay. Dr. Thompson, based on your training and your experience, would you say that there's some general categories that a child might exhibit, behavior that a child might exhibit if they're the victim of sexual abuse?

A. There are some symptoms that we tend to see heightened in most kids.

Q. Okay. Would you mind explaining to the ladies and gentlemen of the jury kind of some general areas of concern.

A. Uh-huh. Well, depression is one thing that we see heightened oftentimes in kids who have been sexually abused. Depression, just sadness, crying, sleep difficulties, appetite difficulties, fatigue, those types of things can be heightened

CAUSE NO. 1284277

| STATE OF TEXAS | § | IN THE 176th |
| VS. | § | DISTRICT COURT OF |
| WILLIE CHOICE | § | HARRIS COUNTY, TEXAS |

## ORDER

ON THIS THE _____23_____ day of ___March___ 2012, came to be heard the State's Motion In Limine, and it is hereby ORDERED that said motion is:

_____✓_____ Granted as to Paragraph I.

_____ Denied.

SIGNED AND ENTERED this the _23_ day of _March_, 2012

_____

Presiding Judge of the 176th District Court